**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 12, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP983-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2025CF32

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LATRES CHRISTOPHER ROBINSON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Kloppenburg, JJ.

¶1     BLANCHARD, J.   Latres Christopher Robinson challenges a circuit court order denying his motion to dismiss this criminal case.[1]  Robinson contends that the preliminary examination was insufficient and defective.

¶2     The sole witness at the preliminary examination was a district attorney's office investigator, called by the prosecutor.   The investigator's testimony consisted of reading, verbatim, the entire probable cause section of the criminal complaint.  He then briefly identified Robinson as the defendant referred to in the complaint.  On cross examination, the investigator implied that he knew nothing about the allegations except what he could read in the complaint.

¶3     On appeal, Robinson first argues that the probable cause section of the complaint fails to provide sufficiently reliable evidence to support the required showing of probable cause.  We reject this argument based on our de novo review of the complaint.

¶4     Second, Robinson contends that he was improperly hindered in opposing bindover because cross examining the investigator could yield nothing of value for the defense.  We reject this argument based on the reasoning in *State v. O'Brien*, 2014 WI 54, 354 Wis. 2d 753, 850 N.W.2d 8.  The court in *O'Brien* upheld the constitutionality of WIS. STAT. § 970.038, which allows courts to rely on hearsay to establish probable cause.  *O'Brien* explains that, after the passage of

---

[1] This court granted Robinson's petition for leave to appeal the circuit court's denial of his motion to dismiss.  *See* WIS. STAT. RULES 808.03(2), 809.50.  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

Although this court granted Robinson's petition on May 20, 2025, the appeal was not fully briefed and available for our decision conference until January 2026, after both sides sought and were granted extensions of time to file appellate briefs.

§ 970.038, the pertinent statutes retain a discrete set of adversarial features that benefit defendants, but that the rights of defendants are limited to those features, which are not augmented by the constitutional right to confrontation that is available at trial.

¶5    Accordingly, we affirm the circuit court's denial of Robinson's motion to dismiss the action.

## BACKGROUND

¶6    Robinson is charged with committing one series of offenses on December 10, 2024, and a second series of offenses on December 20, 2024. More specifically, he is charged with: (1) on or about December 10, committing multiple felonies and misdemeanors that victimized a person identified here as A.B.; and (2) on or about December 20, committing multiple felonies and misdemeanors that victimized both A.B. and a person identified here as C.D.[2]  In an extensive probable cause section, the complaint purports to summarize detailed allegations contained in multiple police reports. As discussed in more detail below, this includes reports in which officers purported to directly quote from witnesses, including A.B., C.D., and another witness identified here as E.F., regarding Robinson's alleged conduct.

¶7    At a preliminary examination before a circuit court commissioner, the sole witness called by the State was an investigator employed by the Rock County District Attorney's Office. After the investigator was placed under oath

---

[2] We identify witnesses and alleged victims using initials that do not correspond to their actual initials. *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.

and identified himself, the prosecutor handed him the criminal complaint and asked him to read aloud the entire probable cause section verbatim, which the investigator proceeded to do. The prosecutor then asked the investigator whether he knew what the person identified in the complaint as Latres Robinson looks like. The investigator answered yes and identified Robinson.

¶8 The following was the entire cross examination by defense counsel:

Q. Did you speak to any of the officers in this case about this case?

A. No, I did not.

Q. You did not speak to [A.B.] or [E.F.,] correct?

A. Correct. I did not.

Q. Or anyone in this case[?]

A. No, I did not.

Q. And you did not write the complaint that you just read to the Court[?]

A. No, I did not.

Q. So if I asked you if a pistol was recovered, you would have no idea[?]

A. That's correct.

¶9 The prosecutor had no redirect examination questions for the investigator. The defense did not call any witnesses.

¶10 The prosecutor moved for bindover. Defense counsel objected, saying in pertinent part:

> There are many statements in the complaint that simply make no sense.… In fact, there are some that are flat-out contradictory. [If we had as witnesses] the officers here who interviewed everyone, we could clean up the record for today. We could remove three levels of hearsay. I

> know that hearsay is acceptable in a preliminary [examination]. But at some point, there is a limit. It's not infinite.
>
> … We have four levels of hearsay here. The evidence presented and that fourth level of hearsay is just not enough to hold someone on $250,000 bond facing nearly two hundred years of prison.

¶11 The commissioner acknowledged the "frustration" expressed by the defense over the inability to make progress in cross examining the only witness called by the prosecution. But the commissioner also noted that hearsay may be admitted at preliminary examinations and concluded that "the State has achieved its relatively low burden of proof" "in showing that a felony has probably been committed and that it's probably been committed by Mr. Robinson."

¶12 Following arraignment, Robinson moved the circuit court to dismiss the action. *See* WIS. STAT. § 970.03(9) ("If the court does not find probable cause to believe that a crime has been committed by the defendant, it shall order the defendant discharged forthwith."). At a motion hearing before the circuit court, Robinson argued that allowing the State to rely solely on a witness who merely read from the criminal complaint, with no other relevant information to offer, did "not allow for proper cross-examination."[3] The State responded with arguments that match those that it now advances on appeal.

---

[3] Robinson also challenged the prosecution's evidence on the ground that the investigator failed to satisfy the requirement that a witness have personal knowledge regarding the matter at issue. *See* WIS. STAT. § 906.02 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness. This rule is subject to the provisions of [WIS. STAT. §] 907.03 relating to opinion testimony by expert witnesses."). Robinson has abandoned reliance on § 906.02 on appeal and therefore we do not address that provision.

¶13 The circuit court acknowledged that the four-page probable cause section of the complaint is "very lengthy" and "very detailed." But the court concluded that the probable cause section does not provide sufficiently reliable evidence supporting the required plausible account showing probable cause. This was because, in the court's view, the evidence consistently involved three levels of hearsay, sometimes four. Further, based on its review of the record from the preliminary examination before the commissioner, the court determined that the preliminary examination was defective because the prosecution presented only one witness who merely parroted the complaint. The court ruled that this improperly deprived the defense of the ability to use cross examination to test the State's allegations as a plausible account supporting probable cause.

¶14 The circuit court nevertheless denied Robinson's motion to dismiss this criminal action on the ground that the preliminary examination defects constituted harmless error. *See* WIS. STAT. § 805.18(1) ("The court shall, in every stage of an action, disregard any … defect in the … proceedings which shall not affect the substantial rights of the adverse party."); WIS. STAT. § 972.11(1) (making rules of evidence applicable in general to criminal proceedings).[4] This court granted Robinson's petition for leave to appeal the circuit court's nonfinal order denying his motion to dismiss.

---

[4] Although we do not reach the issue of harmless error, we observe for context that the circuit court expressed concern that dismissing the case would result in wasted judicial and prosecutorial resources, deprive Robinson of his right to a speedy trial, and compromise the rights of crime victims to a prompt resolution of the case.

**DISCUSSION**

¶15    On our de novo review, we affirm the circuit court, but we do so based on different conclusions. *See* ***State v. Amrine***, 157 Wis. 2d 778, 783, 785, 460 N.W.2d 826 (Ct. App. 1990) (stating in the context of an issued reviewed de novo that an appellate court may rely on grounds different from those relied on by the circuit court). We conclude that the evidence presented at the preliminary examination was sufficient to support bindover. We also reject Robinson's argument that he was improperly deprived of an opportunity for meaningful cross examination. The following are legal principles pertinent to both issues.

¶16    "A defendant charged with a felony is entitled to a hearing pursuant to WIS. STAT. § 970.03 to determine whether there is probable cause to believe that a felony has been committed by that defendant. This hearing is referred to as a preliminary examination." ***O'Brien***, 354 Wis. 2d 753, ¶19; § 970.03(1). "The right to a preliminary [examination] is solely a statutory right," and not a constitutional right. ***State v. Moats***, 156 Wis. 2d 74, 83, 457 N.W.2d 299 (1990). If the commissioner or circuit court conducting a preliminary examination concludes that probable cause exists, it "shall bind the defendant over for trial." § 970.03(7); WIS. STAT. § 757.69(1)(b) (commissioners may preside over preliminary examinations). Preliminary examinations are intended to "protect[] defendants and the public from unwarranted prosecution[s]," commenced by prosecutors without court oversight, and provide one "check" against potential misuses of "prosecutorial discretion." ***O'Brien***, 354 Wis. 2d 753, ¶21.

¶17    Further, the presiding judicial officer is "not required to state the specific felony committed, nor is the court limited to considering whether the defendant committed [a] specific felony charged in the complaint." ***State v.***

7

*Phillips*, 2000 WI App 184, ¶36, 238 Wis. 2d 279, 617 N.W.2d 522 (Ct. App. 2000).

¶18 But the nature of the offenses alleged can matter in determining what counts the State may include in the criminal information filed after bindover. *See* WIS. STAT. § 971.01(1) (requiring district attorney to file, following preliminary examination, criminal information to supersede criminal complaint for felony charges "according to the evidence on such examination"). This involves the issue of what alleged conduct was transactionally related to other alleged conduct. While bindover of a defendant is required when the State establishes probable cause for a single felony by that defendant, when the complaint contains multiple counts, the defendant is bound over for trial on only those counts that are "transactionally related" to a felony for which probable cause has been shown. *See State v. Williams*, 198 Wis. 2d 516, 531-32, 535, 544 N.W.2d 406 (1996). Accordingly, once a defendant is bound over, the State may include in the criminal information on which the defendant is to be tried only those counts that are "transactionally related to a count on which the defendant is bound over." *Id.* at 536-37; *see also State v. Richer*, 174 Wis. 2d 231, 247, 496 N.W.2d 66 (1993) ("[C]ounts contained in the information must flow from the same transaction for which evidence has been introduced at the preliminary [examination]."). Counts are transactionally related if they arise from "a common nucleus of facts," that is, if the counts are "'related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.'" *Williams*, 198 Wis. 2d at 535 (quoted source omitted).

¶19 We now turn to a statutory change made in 2011 that is central to the issues on appeal. This involved broadening of the scope of evidence that a court may rely on at a preliminary examination. After the change, hearsay statements

8

may now be considered, even those statements that do not fall within one of the statutory exceptions to the general rule against the admissibility of hearsay.[5] *See* 2011 Wis. Act 285. "Traditionally, Wisconsin's rules of evidence, set forth in [WIS. STAT.] chs. 901 to 911, … have applied to preliminary examinations…. Under those rules hearsay is inadmissible unless permitted by rule or statute. WIS. STAT. § 908.02." *O'Brien*, 354 Wis. 2d 753, ¶20. But the amended statute now provides:

> (1) Notwithstanding [WIS. STAT. §] 908.02, hearsay is admissible in a preliminary examination under [WIS. STAT. §§] 970.03, 970.032, and 970.035.
>
> (2) A court may base its finding of probable cause under [§§] 970.03(7) or (8), 970.032(2), or 970.035 in whole or in part on hearsay admitted under sub. (1).

WIS. STAT. § 970.038.

¶20 The court in *O'Brien* rejected the argument that permitting hearsay at a preliminary examination violates, as pertinent here, a defendant's constitutional right to confrontation.[6] *Id.*, ¶¶3, 61. Further, the court declined a request that the court "impose new rules limiting the admissibility of hearsay at preliminary examinations." *Id.*, ¶¶4, 62. The court rested the decision not to

---

[5] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," WIS. STAT. § 908.01(3), with "statement" being defined as "(a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by the person as an assertion," § 908.01(1). The general rule is that "[h]earsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute." WIS. STAT. § 908.02. Pertinent here, WIS. STAT. § 970.038 provides an exception for evidence given at preliminary examinations.

[6] *State v. O'Brien*, 2014 WI 54, 354 Wis. 2d 753, 850 N.W.2d 8, also addressed claims by the defendants that their constitutional rights to compulsory process, effective assistance of counsel, and due process had been violated, but that discussion is not directly pertinent to Robinson's arguments on appeal. *See id.*, ¶¶34-50.

impose new rules in part on the fact that "[c]ircuit courts remain the evidentiary gatekeepers," who are obligated to "consider, on a case-by-case basis, the reliability of the State's hearsay evidence in determining whether it is admissible and assessing whether the State has made a plausible showing of probable cause." *Id.* The court also rested its decision in part on the following. Even after the enactment of WIS. STAT. § 970.038, preliminary examinations retain the following adversarial features:

- The defense is allowed to cross examine witnesses called by the State;

- The defense has a right to call witnesses who can provide relevant evidence that might undermine the State's otherwise plausible showing; and

- The defense may argue that there has not been a plausible showing based on reliable evidence.

*Id.*, ¶¶43, 53.

## I. Sufficiently Reliable Evidence to Support Plausible Accounts

### A.    Standard of review

¶21    Robinson argues that we should review for an erroneous exercise of discretion what Robinson characterizes as the circuit court's "evidentiary decision[]" that the probable cause section of the complaint is not sufficiently reliable. The State argues that we should apply the de novo standard of review. As we now explain, controlling authority establishes de novo as the applicable standard in this context.

¶22 In reviewing a circuit court bindover decision, "'we will examine the factual record ab initio and decide, as a matter of law, whether the evidence constitutes probable cause.'" *State v. Anderson*, 2005 WI 54, ¶26, 280 Wis. 2d 104, 695 N.W.2d 731 (quoting *State v. Dunn*, 121 Wis. 2d 389, 399, 359 N.W.2d 151 (1984)). This de novo standard follows from the nature of a preliminary examination. *Dunn*, 121 Wis. 2d at 395. It is a "'summary proceeding'" that serves to screen out "'hasty, malicious, improvident, and oppressive prosecutions,'" and avoid the private and public costs of a felony prosecution when there are not "'substantial grounds upon which a prosecution may be based.'" *Id.* (quoted sources omitted). This limited purpose of screening out only improvident felony charges essentially eliminates the opportunity for circuit courts to make the types of factual and credibility determinations to which an appellate court, in other contexts, generally defer. This is because a preliminary examination is not used to determine guilt or innocence. That will be for the factfinder to determine at trial. In contrast, the preliminary examination is "not a proper forum to choose between conflicting facts or inferences, or to weigh the state's evidence against evidence favorable to the defendant." *See id.* at 398. Nor does a court at a preliminary examination "delve into" witness credibility. *Id.* at 397. Instead, the court is to "ascertain the plausibility of a witness's story" and determine "whether, if believed, it would support a bindover." *Id.*

¶23 The court in *Dunn* observed that sometimes only a fine line will separate two concepts: (1) a plausible account showing probable cause, which the State must show and which the defense may challenge; and (2) witness credibility, which is never at issue. *Id.* ("We recognize that the line between plausibility and credibility may be fine; the distinction is one of degree."); *see also Wilson v. State*, 59 Wis. 2d 269, 295, 208 N.W.2d 134 (1973) (distinguishing between using

cross examination to permissibly delve into the "plausibility of the story" and to impermissibly "delve[] into general trustworthiness of the witness"). At the same time, the court in *Dunn* also noted that courts in this context are to concern themselves with "'the practical and nontechnical probabilities of everyday life.'" *Dunn*, 121 Wis. 2d at 397 (quoted source omitted).

¶24 We now explain why we reject Robinson's arguments that the de novo standard contained in *Dunn* and *Anderson* does not apply here.

¶25 Robinson directs us to discussion in *O'Brien*, already mentioned above, that courts holding preliminary examinations "remain the evidentiary gatekeepers" after the enactment of WIS. STAT. § 970.038. *See O'Brien*, 354 Wis. 2d 753, ¶¶4, 60, 62. Robinson suggests that the de novo standard of review found in *Dunn* and *Anderson* cannot be squared with this evidentiary gatekeeping function.

¶26 But the court in *O'Brien* did not purport to alter the long-established de novo standard of review, nor more generally did *O'Brien* alter the "mere plausibility" standard articulated in *Dunn*. Indeed, *O'Brien* cited *Dunn* repeatedly on various other points without suggesting that the court was overruling or modifying any statement in *Dunn*. *See O'Brien*, 354 Wis. 2d 753, ¶¶19, 24, 46-47. In the passages that Robinson now cites, the *O'Brien* court explained why the court declined to establish new rules to account for the enactment of WIS. STAT. § 970.038—leaving to the legislature whether to make any additional changes to preliminary examinations. This was in part because defendants are protected by the obligation of a court to assess whether the evidence presented at a preliminary examination, including hearsay evidence, is sufficiently reliable, as part of the court's overall determination of whether the State has made a plausible

showing of probable cause. *See id.*, ¶¶4, 51-60. In the course of this discussion, it was natural for the *O'Brien* court to speak in terms of circuit court decisions, without needing to digress to explain that this would also apply to appellate court opinions under the long-established de novo standard of review.

¶27 Robinson contends that "[i]t would be absurd to argue that judgment-related evidentiary decisions should be reviewed for anything other than [an] erroneous exercise of discretion." Robinson essentially asks us to reject the underlying logic of the de novo standard of review explained in *Dunn* and *Anderson* which, to repeat, is left unchanged by anything stated in *O'Brien*. As summarized above, this is based on the summary nature of preliminary examinations, which bear little resemblance to trials. *See Dunn*, 121 Wis. 2d at 396-98. Under the de novo standard, appellate courts are deemed to be as well positioned as circuit courts are to make probable cause determinations under the applicable legal standards, even though the appellate courts are of course limited to what can be read in court records.

¶28 Robinson suggests that the de novo standard of review as applied in this context has been nullified or modified by the enactment of WIS. STAT. § 970.038. We are not persuaded. Robinson fails to develop a supported

argument that the language in these opinions, or the reasoning underlying the de novo standard, have been rendered inoperative by § 970.038.[7]

### B.    Additional background

¶29    The criminal complaint and the criminal information that the State filed after bindover both charge Robinson with the same 13 offenses:

- On December 10, 2024: kidnapping A.B. using a dangerous weapon; false imprisonment of A.B. using a dangerous weapon; misdemeanor battery of A.B.; disorderly conduct; first degree recklessly endangering safety of A.B. using a dangerous weapon; and possession of a firearm by a felon.

- On December 20, 2024: kidnapping A.B. using a dangerous weapon; false imprisonment of A.B. using a dangerous weapon; misdemeanor battery of A.B.; disorderly conduct; first degree recklessly endangering safety of A.B. using a dangerous weapon; first degree recklessly endangering safety of C.D. using a dangerous weapon; and attempting to flee or elude an officer.

¶30    The State argues that, under the transactional relationship analysis, the complaint in effect alleges two criminal transactions, one on December 10 and the other on December 20.  Robinson does not dispute the point.  This sets up the

---

[7] Robinson briefly points out that an appellate court, under the case law establishing the de novo standard of review in this context, "'will search the record for any substantial ground based on competent evidence to support the circuit court's bindover decision.'" *See State v. Anderson*, 2005 WI 54, ¶26, 280 Wis. 2d 104, 695 N.W.2d 731 (quoted source omitted).  In this connection, Robinson notes that the circuit court here decided that there was not sufficient evidence to support bindover, even though the court based its ultimate decision on harmless error.  Considering these points together, Robinson asserts that here we should "search for reasons to uphold the circuit court's finding that the testimony presented was unreliable."  We question how we could apply this search-the-record concept here, given that all of the challenged evidence was contained in a criminal complaint, which we can review in the same manner as the circuit court.  In any event, for reasons explained in our discussion below, on our de novo review we conclude that the circuit court's determination of unreliability is not supported by pertinent portions of the probable cause section of the complaint.

points that the State seeks to make, namely, that there was sufficiently reliable evidence to support a plausible account that a felony was probably committed on each of the two days and that Robinson probably committed each felony.

¶31 As noted above, defense counsel made broad assertions at the preliminary examination that the complaint contains "many statements" "that simply make no sense," and some "that are flat-out contradictory," but counsel did not provide the commissioner with any examples of nonsense or contradiction. Having read the complaint carefully, we disagree with those broad assertions. As the circuit court accurately observed, the complaint is quite lengthy and detailed. To this, we add that it is coherently structured in purporting to recount events occurring in or around Beloit (with one trip into bordering state Illinois) over the course of about one month, generally making clear the source for each asserted fact. A deliberate reader can discern what information is supposed to have come from which police report and what statement is attributed to which speaker.

¶32 Reasonable inferences have to be drawn, based on a reading of the complaint as a whole, in order to understand the timing or the location of some events. Also, regarding one paragraph in particular, we would have to guess at the full meaning. This paragraph refers to a person who was allegedly interviewed by police on December 16, and who is quoted as having relevant information about events on December 10. But this one unclear paragraph does not contain any materially exculpatory reference. In Robinson's favor, we disregard this paragraph and we do not count it toward a showing of probable cause.

¶33 Having made those overarching points, we now summarize some significant allegations in the complaint. It would be difficult to capture all possibly relevant details here, short of reproducing four pages of dense text.

¶34    As of December 2024, Robinson had a felony conviction.  It is a felony offense for a felon to possess a firearm.  *See* WIS. STAT. § 941.29(1m)(a).

¶35    On December 10, 2024, E.F. told a police officer the following.  E.F. had just seen Robinson arrive at a residence in Beloit where A.B. was then located.  Robinson grabbed A.B. by the hair, punched her about 20 times, and dragged her away from the residence.  Before Robinson arrived, A.B. appeared "frantic and scared."  E.F. witnessed the beating and the taking away of A.B. while E.F. hid under a pile of clothing.  A.B. and Robinson were no longer at the residence by the time police interviewed E.F.

¶36    On December 17, 2024, an FBI agent told a police detective the following.  The agent had recently made contact with A.B., who reported that she had been kidnapped by Robinson but that she had been able to get away.  The FBI agent further told the detective that the agent had met face-to-face with A.B. and that the agent had been able to arrange a hotel room for her to stay in.

¶37    On December 20, 2024, police found A.B. kneeling in the snow by an unoccupied car, and an officer observed that she had a visibly "swollen lump" on her left eye.  A.B. told a police officer the following.  A.B. met Robinson about one month earlier.  Robinson tried to get her to participate in a sex trafficking operation.  She declined to participate, and, on December 9, 2024, Robinson tried to kill her after she attempted to get away from him.

¶38    More specifically, A.B. told the officer that, after she tried to distance herself from Robinson on December 9, he "pistol whipped" her (struck her with a pistol) and kicked her several times, leaving her feeling as if one of her hips was dislocated and she could barely walk.  Robinson then dragged A.B. to his

16

vehicle and drove her into Illinois, where he took her into a cornfield and threatened to shoot her in the head.

¶39    A.B. further told the officer that, back in Beloit, late on December 19 or early on December 20, 2024, Robinson, driving a car at a high rate of speed, followed A.B. in her car. He rear-ended her car. She kept driving, and he kept following. She called a friend, C.D., for help. After Robinson caused her car to spin out and into a ditch, Robinson approached A.B. and "pistol whipped" her in the head, to the point that her vision went "white" and she might have lost consciousness. Robinson dragged her over to, and then into, his car. Robinson drove away with A.B. in the car, and A.B. saw that C.D. was following in a vehicle. Robinson stopped his car. C.D. stopped a good distance behind Robinson. Robinson got out of his car and told C.D. to quit following. After Robinson realized that C.D. was going to continue to follow him, Robinson drove A.B. back to her car and told her to leave town. A.B. got back into her car and drove. Robinson again followed in his car. Robinson stopped following A.B. only after police officers began pursuing Robinson, after responding to 911 calls about this incident.

¶40    C.D. told an officer the following. A.B. called C.D. for help because Robinson was chasing her in his car at a time that aligns with A.B.'s statement on the same topic. When C.D. responded to the area specified by A.B., C.D. saw Robinson following A.B.'s car and tried to cut off Robinson's pursuing car. Robinson lowered the window of his car and pointed a black 9-millimeter handgun in C.D.'s face and told C.D. to stay away. C.D. followed as Robinson continued to pursue A.B., and then C.D. saw A.B.'s car in a ditch. Robinson approached A.B.'s car, grabbed her by the hair, and pulled her from her car. Robinson hit

17

A.B. in the head with the handgun, grabbed her, put her in his car, and drove away.

### C. Analysis

¶41 We are satisfied, based on our de novo review, that the State met its burden of proof. The allegations that we have summarized, when construed in the context of the probable cause section as a whole and the investigator's identification of Robinson, provide sufficiently reliable evidence to support a plausible account that: a felony was probably committed on or about December 10, 2024; a felony was probably committed on or about December 20, 2024; and Robinson probably committed both felonies.

¶42 Regarding activity on December 10, E.F.'s account to police is a reasonably detailed and straightforward description of Robinson's alleged beating and false imprisonment of A.B., and of his possession of a firearm at a time when he was a felon. *See* WIS. STAT. § 940.30 (false imprisonment); WIS JI—CRIMINAL 1275 (2015) (elements of false imprisonment); WIS. STAT. § 941.29(1m)(a) (felon in possession of a firearm). Further, even beyond the corroboration provided by the account related by the FBI agent, A.B. is quoted as giving a consistent account to an officer, including what she represented was a brief history of her relationship with Robinson and his alleged reasons for abusing her. All of these statements were purportedly made to law enforcement officers, and the sources of information are identified.

¶43 Turning to the hearsay aspect of the December 10 allegations, Robinson gives us no reason to suspect inaccuracy or exaggeration in any of the following: what the testifying investigator related from the complaint as purporting to reflect what E.F. allegedly directly told a police officer; what A.B.

18

allegedly directly told the FBI agent, who is purported to have spoken with the detective; and the statements that A.B. made to the officer. It is possible that E.F. or A.B., or both of them, fabricated some or all of their statements or got material information wrong, based on such failings as bias or problems involving memory or perception. At a trial, tools that include cross examination are available to Robinson to attempt to reveal fabrication or inadvertent inaccuracy by any witness. Further, Robinson will have the opportunity to offer any defenses recognized in the law, based on all of the information available to him by the time of trial. What seems much less likely at this stage, based on the allegations here, is that any of the law enforcement personnel fabricated or misunderstood the uncomplicated allegations regarding Robinson's alleged conduct as related in the complaint in a way that could undermine probable cause.

¶44 We do not mean to suggest a general rule that hearsay statements which are quoted by, or that quote, law enforcement agents are necessarily reliable. Instead, we take into account the nature of the specific events described in the complaint. When we do so, we do not see a reason to think that relevant statements were falsely or inaccurately conveyed at any step by anyone, including by law enforcement officers acting in the course of their official duties. The circumstances described in the complaint convey, at least on their face, timely accounts by people with first-hand information, given with what could be appropriate motivations to provide accurate information to police.

¶45 Our analysis regarding the December 20 conduct is similar. The quoted statements of A.B. and C.D. are reasonably clear accounts of felonious conduct, and the two accounts are strongly similar. And again here, the uses of hearsay do not suggest any particular reliability problems. Regarding the statements of both A.B. and C.D., a police officer implicitly purports to have

19

accurately quoted them in a report made in the course of official duties while investigating accounts of serious crimes. The details related in the complaint provide no reason to suspect that material parts of the reports have been summarized falsely or inaccurately.

¶46 Further, the allegations regarding events on December 10 generally reinforce the allegations regarding events on December 20, and vice versa.

¶47 The circuit court decided that, because the investigator's testimony consistently conveyed three or more levels of hearsay, this rendered all of the evidence unreliable. For example, the following constitutes three levels of out-of-court statements: (1) the investigator's testimony quoted all of the allegations made in the complaint; (2) allegations in the complaint consisted of statements made in reports by investigating officers; and (3) a witness such as A.B. is quoted by an investigating officer. It is true that this left the defense at the preliminary examination unable to cross examine any of the following persons: the drafter of the complaint, about how it was prepared; the officers, about how a witness appeared at the time the witness was interviewed or about what the officer recalled the witness saying or not saying; or any witness, about the substance of the witness's purported statements.

¶48 But the assessment of reliability of hearsay in this context does not turn on a mechanical tallying of levels of hearsay. Hearsay statements vary greatly in their reliability. For example, the degrees of attenuation from declarant to witness will fluctuate in both number and particular circumstances. *O'Brien* teaches that the assessment of reliability at a preliminary examination turns on a consideration of the same rationales that render certain types of hearsay statements admissible. *See O'Brien*, 354 Wis. 2d 753, ¶¶57-58. The reliability of hearsay

statements can be influenced by, for example, the timing of a declaration compared to a startling event or whether there are reasons to think that a speaker was motivated to tell the truth, such as for purposes of medical treatment. *See id.*, ¶58 (discussing, *e.g.*, WIS. STAT. § 908.03(2), (4)). But, to be clear, the assessment of reliability at a preliminary examination does not turn on whether a formal exception to the general rule against the admissibility of hearsay statements is established. This is because the legislature decided to enact an unqualified elimination of the general rule barring hearsay in this context, even when a statement does not fit neatly into one of the 23 exceptions from hearsay.[8] *See O'Brien*, 354 Wis. 2d 753, ¶¶57-58; WIS. STAT. § 970.038. Bearing these points from *O'Brien* in mind, we conclude that sufficient indicia of reliability are present here.[9]

¶49 After the State on appeal makes substantive arguments that are in line with our conclusions on this issue, Robinson's reply brief exclusively defends the circuit court's decision as an exercise of the court's discretion. For reasons we

---

[8] Some other jurisdictions allow prosecutors to rely on a narrower scope of evidence at preliminary examinations, compared to the current Wisconsin approach. At a preliminary examination in California, for example, a probable cause determination "may be based in whole or in part upon the sworn testimony of a law enforcement officer ... relating the statements of declarants made out of court offered for the truth of the matter asserted," so long as the officer has five years of law enforcement experience or has participated in a relevant training course, and the officer also has "'sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement.'" *Correa v. Superior Court*, 40 P.3d 739, 744 (Cal. 2002) (quoted authority omitted); CAL. PENAL CODE § 872(b); *see also People v. Lewis*, 903 N.W.2d 816, 819 (Mich. 2017) (noting the existence of "variations in each state's preliminary-examination procedures").

[9] We need not and do not reach the additional argument advanced by the State that various formal hearsay exceptions in fact apply here to certain statements based on the circumstances described in the complaint. We conclude that, even without the formal application of these evidentiary rules, the indicia of reliability for statements showing at least one probable felony on each day are strong.

have explained, Robinson applies the wrong standard of review. By failing to address the State's argument under the correct standard, Robinson implicitly concedes that the content of the complaint supports Robinson's bindover regarding both the December 10 and December 20 "transactions" when the correct standard is applied.

¶50     The circuit court here appropriately recognized that its role was not that of a rubber stamp for the State's theory of felonious conduct by Robinson. *See O'Brien*, 354 Wis. 2d 753, ¶60 (the enactment of WIS. STAT. § 970.038 "does not eliminate the court's obligation to exercise its judgment"). Further, we acknowledge the circuit court's specific concerns about the potential unreliability of hearsay, particularly as levels of hearsay grow. As the court noted in *O'Brien*, "[t]raditionally, the rule against hearsay views out-of-court statements as inherently unreliable." *O'Brien*, 354 Wis. 2d 753, ¶57. But, given the reasoning in *O'Brien* interpreting the pertinent statutory language and discussing why the court concluded that it did not need to provide any new rules in this area, the mere presence of multiple levels of hearsay does not inherently render the prosecution's allegations of a felony insufficiently reliable, as the circuit court here suggested in its ruling.

¶51     The court in *O'Brien* emphasized the "case-by-case" gatekeeping obligation of the court at a preliminary examination. *Id.*, ¶62. This requires courts to assess in each case "the reliability of the State's hearsay evidence in determining whether it is admissible and assessing whether the State has made a plausible showing of probable cause." *Id.* Consistent with the circuit court's general concerns in this case, it may be that in other cases the State will rely too heavily on hearsay statements that, unlike the evidence here, lack a sufficient combination of clarity, probative value, detail, and use of multiple sources.

22

## II. Reliance on Mere Reading of Probable Cause Section

¶52    Robinson argues that his motion to dismiss should have been granted because the defense was deprived of what Robinson describes as a "meaningful ability to cross-examine and by extension to challenge the plausibility of the allegations."    Put differently, Robinson argues that what occurred at the preliminary examination in this case is not "appropriate as a matter of law" because the defense lacked "any realistic ability to challenge the plausibility of the State's case."    The State argues in part that "Wisconsin law already bars Robinson's definition of 'meaningful' cross-examination" at this pretrial stage of a criminal prosecution.  We conclude that the State is correct.

¶53    We use a de novo standard of review in interpreting and applying statutory provisions and related case law to undisputed facts.  *Diamond Assets LLC v. Godina*, 2022 WI App 47, ¶14, 404 Wis. 2d 404, 979 N.W.2d 586.

¶54    We begin our discussion of this issue with three clarifications.

¶55    First, the parties and the circuit court shared an implied premise. This would be that the investigator here had no relevant information to provide at the examination about the allegations against Robinson, aside from what he read from the criminal complaint and his testimony that he knew what Robinson looks like.  But the investigator did not explicitly testify that he had not reviewed any other case-related documents or evidence in the case.  Instead, he testified that: he had not spoken "to any of the officers in this case about this case," to A.B. or E.F., or to "anyone in this case"; he had not drafted the complaint; and he did not know whether a pistol had been recovered.  We accept the implied premise.  Therefore, we do not count against Robinson the fact that defense counsel did not more thoroughly explore with the investigator possible sources of relevant information

that the investigator might have had. At least in theory, this could have included information that the defense could have tried to use to undermine the reliability of the State's evidence.[10]

¶56 Second, from this point forward, we do not refer further to the investigator's in-court identification of Robinson. Robinson has never challenged this identification. In other cases, the inability of the State to produce sufficiently reliable information identifying the charged defendant as the alleged perpetrator whose conduct is described in a complaint would prevent bindover, no matter how strong the evidence might be that *someone* committed a felony.

¶57 Third, to make our discussion more coherent on the cross examination issue, we fill in what is arguably a hole in Robinson's argument. Robinson argues that defendants are entitled to some measure of "meaningful"

---

[10] Robinson refers to the investigator here as a mere "reader" of the criminal complaint. We now explain why we expect that it will be difficult to establish generally applicable rules regarding "readers" across cases. For one thing, in other cases, preliminary examination witnesses may be asked on direct or cross examination to testify about, or read from, documents other than, or in addition to, the complaint. Assuming that non-hearsay rules of evidence are satisfied, this could include police reports, bank records, text messages, or affidavits. *See Anderson*, 280 Wis. 2d 104, ¶55 (the rules of evidence apply at preliminary examinations); *O'Brien*, 354 Wis. 2d 753, ¶20 (suggesting that all non-hearsay-related rules of evidence apply at preliminary examinations). The court might determine that evidence from such sources, if admissible at a preliminary examination, is relevant and sufficiently reliable, or instead irrelevant or insufficiently reliable. In addition, in some cases a witness lacking direct information regarding the allegations in the complaint might have a history in local law enforcement that could provide relevant information about local geography, local police practices, or other contextual information that might assist the defense in challenging the plausibility of the State's account or undermining the reliability of the State's evidence.

Similarly, with respect to criminal complaints as sources of evidence, we suspect that discovering generally applicable rules will also likely be elusive, because reading from one complaint is not the same as reading from another. Factual scenarios vary widely, as do the degrees to which criminal investigations are complex or conducted under time pressure. Further, law enforcement agencies and district attorney offices across the state can engage in diverse practices.

cross examination at the preliminary examination. But he does not provide an articulable standard for the quantity or quality of "meaningful" cross examination to which defendants are entitled. Instead, he merely asserts that there was no chance here for the minimum allowable opportunity for cross examination and that defendants must be allowed to cross examine witnesses who have "information related to a declarant's demeanor, ability to perceive an event, and some gauge of credibility." As a placeholder for addressing his argument, we assume that Robinson contends that, at a minimum under these circumstances, he should have been allowed to cross examine at least one person called by the State who was a victim, officer, or other witness who was knowledgeable about allegations in the complaint.[11] We use this placeholder for clarity of discussion, but our analysis would not change if the standard were broader or narrower.

¶58 With those clarifications, we conclude, based on the reasoning in *O'Brien* and its interpretation of pertinent statutory language, that the preliminary examination here was not defective because the prosecution did not call as a witness one such person.

---

[11] This was essentially the scenario that the circuit court here had in mind, although the court centered its remarks on officers identified in the complaint:

> I think that if any of the officers that were involved in the investigation came [to the preliminary examination] and read the criminal complaint, we wouldn't be here today [considering the motion to dismiss] because [defense counsel] clearly could have cross examined [that officer], at least [regarding the officer's] knowledge of their part of the investigation.

Along the same lines, the court at another point said that it would have been sufficient if the investigator had, in advance of the preliminary examination, spoken about the case directly with any officer identified in the complaint.

¶59 Under ***O'Brien***, Robinson cannot argue that the statutes governing preliminary examinations should be interpreted to incorporate the Sixth Amendment guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *See* U.S. CONST. amend. IV. The court explained that it has long been established that "the Confrontation Clause does not apply to preliminary examinations." ***O'Brien***, 354 Wis. 2d 753, ¶30 (citing extensive Wisconsin appellate court authority). This leaves Robinson to base his argument for more meaningful cross examination on pertinent statutes. But reasoning in ***O'Brien*** also forecloses this argument.

¶60 Explaining further, the court in ***O'Brien*** recognized that defendants have a statutory right to cross examine witnesses called by the State at preliminary examinations, *see* WIS. STAT. § 970.03(5), but the court clarified that this right "does not create a confrontation right." ***O'Brien***, 354 Wis. 2d 753, ¶¶32-33. Instead, § 970.03(5) forecloses such a right, because the legislature has specified that defendants are entitled to cross examine only those witnesses actually called by the State, and the legislature has not broadened that to add witnesses whom the defendant would like the State to call. Even the justice who dissented in ***O'Brien*** (in order to make a point that is not directly pertinent here, related to the statutory compulsory process right) agreed with the majority that "the State is not required under either" WIS. STAT. § 970.038 or § 970.03(5) "to call witnesses just so a defendant may cross-examine them." ***O'Brien***, 354 Wis. 2d 753, ¶74 (Abrahamson, C.J., dissenting).

¶61 The majority in ***O'Brien*** recognized that allowing commissioners or circuit courts to rely on hearsay evidence that is deemed sufficiently reliable "may make the task of the defense more difficult" at a preliminary examination. ***Id.***, ¶52. But the court stated that this change does not render a preliminary

26

examination a "sham," because "[s]everal procedural and evidentiary safeguards remain unaffected by the passage of the legislation." ***Id.*** As the court explained, "adversarial testing" by the defense remains in part by way of WIS. STAT. § 970.03(5), which provides for cross examine of prosecution witnesses and the ability of the defense to call witnesses. ***O'Brien***, 354 Wis. 2d 753, ¶53.

¶62 Robinson argues that defendants have no "realistic ability to challenge the plausibility of the State's case" when the prosecution takes the approach that was taken here. Robinson emphasizes that, at this stage of a criminal case, the State normally has not provided the defense with discovery materials and any defense investigation is likely minimal at best. *See* WIS. STAT. § 970.03(2) (preliminary examinations must commence within 20 days after the initial appearance if the defendant is out of custody and within 10 days if in custody on bail over $500); ***State v. Schaefer***, 2008 WI 25, ¶¶3, 37-40, 308 Wis. 2d 279, 746 N.W.2d 457 (stating that criminal defendants do not have a statutory or constitutional right, before a preliminary examination, to compel production of the State's investigative materials by subpoena duces tecum, in part because the purpose of a preliminary examination is narrowly focused on the "expeditious determination" of probable cause; also stating that the subpoena in that case was "plainly an attempt to effect discovery"). In a similar vein, Robinson argues that it is too easy for a prosecutor drafting a criminal complaint to omit material that might help the defense at a preliminary examination, which he characterizes as "inconsistencies, [observed] nervousness [of witnesses], the officer[s'] impression[s], or plain impossibilities."

¶63 The first problem with this argument is that it overlooks the fact that the State carries the burden at a preliminary examination of presenting evidence supporting a plausible account showing probable cause, which is a burden that it

presumably will not carry in cases involving what Robinson calls "plain impossibilities." *See, e.g.*, **State v. Schaab**, 2000 WI App 204, ¶¶15-16, 238 Wis. 2d 598, 617 N.W.2d 872 (affirming magistrate's determination that the prosecution failed to show probable cause for alleged felony bail jumping, because the bail condition at issue permitted the only conduct by the defendant that was alleged to be a crime).

¶64 Second, the majority in **O'Brien** emphasized that the "scope" of preliminary examinations established by the legislature is "narrow," and that it is not a "mini-trial[]."[12] **O'Brien**, 354 Wis. 2d 753, ¶24. Under the applicable statutes, discovery and a full opportunity for defense investigation are still downstream, in advance of trial. But that does not mean that the right to cross examine prosecution witnesses is meaningless and, to repeat, defendants retain their right to call witnesses. Under these circumstances, what Robinson identifies as the challenges that defendants typically face at preliminary examinations are foreseeable, natural consequences of the process created by the legislature through pertinent statutes to create a pretrial check on improvident felony charges.

¶65 While only implied, Robinson may mean to suggest that we should interpret the pertinent statutory terms to require the State to call witnesses based on a balancing test. Such a test would weigh the relative costs to the parties. In Robinson's view, in a case such as this one, the State's cost of calling at least one witness with relevant first-hand information is low, while the cost to the defense of

---

[12] The State notes that one measure of the limited scope of cross examination at a preliminary examination is that the defendant's trial right of confrontation typically bars the admission at trial of a witness's preliminary examination testimony in the absence of the witness. *See* **State v. Stuart**, 2005 WI 47, ¶¶30-31, 279 Wis. 2d 659, 695 N.W.2d 259.

being left to cross examine only a witness whose relevant knowledge is much attenuated from first-hand sources is high. For example, he asserts that the prosecution's approach in this case created a mere "façade of justice." He contends that it was especially "egregious" for the prosecution not to call as a witness at least one officer named in the complaint, "given that there were six different officers named in the complaint." But there is no basis for such a requirement in current statutory language.

¶66 Separately, Robinson argues that the legislature could not have intended to allow the State to establish probable cause for purposes of a preliminary examination as the prosecutor did here, because this creates no additional hurdle to bindover that is not already provided to defendants through their ability to challenge the sufficiency of the allegations in a criminal complaint. *See* WIS. STAT. § 971.31(2); *see also* § 971.31(5)(c) (defendants must move for dismissal of felony based on the insufficiency of the complaint before the preliminary examination). By Robinson's account, the approach here turns the preliminary examination into "an absurd" duplication of the challenge to the sufficiency of the complaint. It would be a "useless exercise" to grant defendants the right to preliminary examinations, he contends, only to withhold that right when "the State writes a thorough complaint."

¶67 We conclude that Robinson's duplication argument does not show an absurd result, which the legislature could not have intended, when it failed to provide for some minimum level of cross examination. Robinson's argument fails for at least this reason: he fails to explain why the legislature could not have anticipated and accepted that, under the circumstances he identifies, the preliminary examination theoretically duplicates other criminal proceedings. That is, to the extent that there may be some overlap—perhaps at times rising to the

level of duplication—in some criminal cases between the results that a defendant could obtain at the motion to dismiss stage and the results that the same defendant could obtain at the preliminary examination stage, this would be merely extra protection against having to defend further against improvident felony charges for those defendants in those particular scenarios. The possibility of such duplicative protection in a hypothetical case does not support an argument that the legislature contemplated a requirement of "meaningful" cross examination at all preliminary examinations.

¶68 Turning to Robinson's concern that only thorough complaints will provide a basis for bindover, we see no fallacy or illogical result. It only stands to reason that, all other things being equal, a thorough complaint will more likely provide sufficiently reliable evidence supporting a plausible account than one that is not thorough. Robinson fails to show how creating an incentive for thorough complaint drafting could be part of an absurd legislative result in this context.

¶69 Further, even for cases in which the prosecution's evidence for bindover consists entirely of a reading of the complaint or similar forms of evidence, we now explain why we disagree with Robinson's position that the tools available to defendants are going to be useless in all cases.

¶70 The complaint in this case happens to be substantial, in ways that we have discussed. But, as we have mentioned, in other cases the defense could argue that the prosecution has relied on the complaint alone to its detriment, because the complaint contains significantly attenuated or unclear hearsay statements or statements that are otherwise illogical or materially inconsistent.

¶71 Beyond that point, Robinson had the right to call witnesses who might be helpful in rebutting the State's argument that the complaint establishes

probable cause. To be sure, "[a] defendant's right to call witnesses at a preliminary examination is not an unrestricted right" and is limited to evidence "relevant to the probable cause determination." *O'Brien*, 354 Wis. 2d 753, ¶37 (citing *State v. Knudson*, 51 Wis. 2d 270, 280, 187 N.W.2d 321 (1971)). For example, the court in *Knudson* observed that a circuit court may exclude a potential defense witness who is called for the purpose of "fish[ing] for elements of the state's case," which would amount to discovery, or "to expose inconsistencies in the accounts given by the victim to various people," which would involve credibility. *Knudson*, 51 Wis. 2d at 280. Still, Robinson here had the right to call any witness who could rebut probable cause by shedding light on "'essential facts'" regarding the probability that a felony occurred and that the defendant committed the felony. *See id.* (quoted source omitted).

¶72 The "essential facts" referred to in *Knudson*, which a defense witness might offer at a preliminary examination, could bear on an important topic that the State has only implicitly covered in its evidence, essentially resolving in favor of the defense a required element that the State must prove. Or, as highlighted by the discussion regarding evidence reliability in *O'Brien*, "essential facts" could consist of evidence that raises doubt about the reliability of material evidence offered by the State. This could undermine the plausibility of an account supporting probable cause. For example, in a case involving a felon-in-possession charge, the defendant might call a witness who could establish that the defendant did not have a felony conviction, when the State has offered only a thinly supported assertion that he did. Or, in a physical assault case, a defendant might introduce apparently conclusive evidence that an alleged victim was in a distant city at all relevant times, in the face of possibly unreliable evidence that the victim had been in the area suggested by the State's evidence.

¶73 In sum on this issue, preliminary examination courts continue to assess whether an account presented by the State, if the account is believed, supports probable cause. Courts continue to be barred from weighing the credibility of witnesses or to choose between conflicting versions of the facts just because one version is more persuasive. But *O'Brien* teaches that courts are also tasked with evaluating the reliability of particular pieces of evidence, in addition to applying the non-hearsay evidentiary rules, such as relevance. Accordingly, in addition to having the potential to provide the court with "essential facts" that might fill what amounts to a hollow or weak spot in the State's evidence, a defense witness could also help the defendant persuade a court that material evidence offered by the State is not reliable and therefore the State has not shown the required plausible account.[13]

## CONCLUSION

¶74 For all of these reasons, we affirm the circuit court's order denying Robinson's motion to dismiss this criminal case.

*By the Court*.—Order affirmed.

Recommended for publication in the official reports.

---

[13] Because we resolve both of the issues that Robinson raises in favor of the State, we do not address the circuit court's harmless error analysis.